# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWARD M. COKE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:14-CV-0585-VEH** |
| | ] | |
| **THE BIRMINGHAM DISTRICT** | ] | |
| **HOUSING AUTHORITY, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

## I.    Introduction

Plaintiff Edward M. Coke ("Mr. Coke") initiated this action on March 31, 2014, and is representing himself. (Doc. 1). Pending before the court is Defendants' Motion to Dismiss (Doc. 9) (the "Motion") filed on April 22, 2014.

On April 30, 2014, the court entered a briefing order on the Motion and expressly cautioned Mr. Coke that the shotgun nature of his complaint made it very difficult to decipher the nature of his claims. (Doc. 10 at 2-3). Mr. Coke filed his opposition to the Motion on July 7, 2014. Mr. Coke has never filed an amended complaint. Defendants did not file a reply brief. Having studied both sides' contentions, the Motion is due to be granted as modified below.

## II.    Standards

### A.    *Pro Se* Pleadings

As an initial matter, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). Accordingly, Mr. Coke's allegations asserted against Defendants are not appropriately subject to dismissal simply because they lack procedural precision or completeness in the context of Rule 8 of the Federal Rules of Civil Procedure.

### B.    Rule 12(b)(6) Dismissal Standard

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general

pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.   Analysis

Mr. Coke's complaint appears to assert procedural due process and equal protection claims, pursuant to 42 U.S.C. § 1983, arising out of his former employment with the Housing Authority Birmingham District ("HABD") as an HQS inspector. (Doc. 1 ¶¶ 1-2). As outlined by Defendants in their Motion, these purported constitutional violations are all implausibly alleged.

### Mr. Coke's Purported Procedural Due Process Claims

"The success of due process arguments depends upon the finding of a constitutionally protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach." *Gray v. Board of Regents of Univ. System of Georgia*, 150 F.3d 1347, 1350 (11th Cir. 1998) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)).

4

Mr. Coke's procedural due process claims fail for multiple reasons. First, because Mr. Coke has not alleged and cannot reasonably assert a "legitimate claim of entitlement" to his position as an HQS inspector for HABD, he has no plausible due process claim premised upon the deprivation of a property interest.

As explained by the United States Supreme Court in *Roth*, when it analyzed the constitutional rights of a comparably situated non-tenured teacher, an "abstract" concern about continuing public sector employment, without more, is insufficient to sustain a procedural due process claim:

> Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. <u>He must, instead, have a legitimate claim of entitlement to it.</u> It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to v[i]ndicate those claims.

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. . . .

> Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate

claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but <u>he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment</u>.

*Roth*, 408 U.S. at 577-78, 92 S. Ct. at 2709-10 (footnote omitted) (emphasis added).

Second, while a public sector employee can, under certain circumstances, pursue a procedural due process claim on the basis of a compromised liberty interest, *see, e.g., Buxton v. City of Plant City*, 871 F.2d 1037, 1042-43 (11th Cir. 1989) ("The district court required that Buxton prove:  (1) a false statement  (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer  (6) without a meaningful opportunity for employee name clearing.") (footnotes omitted), here Mr. Coke has not plausibly asserted the presence of these *prima facie* elements. In particular, the court does not see any allegations that HABD has made the nature of Mr. Coke's dismissal available to the "public" or that he has endured "reputational damage" from this disclosure within the meaning of *Buxton*. *Id.* at 1046; *see also id.* at 1045 ("Because of the stigmatizing material in Buxton's personnel file and the internal affairs report of the English incident, <u>both a part of the public records pursuant to Fla. Stat. §§ 119.01 and 119.07, Buxton has been foreclosed from several employment opportunities</u>.") (emphasis added); *id.* at 1045-46 ("Accordingly, we reverse the judgment of the district court and hold that

6

the presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest under the due process clause of the fourteenth amendment to the United States Constitution."); *cf. Thomason v. McDaniel*, 793 F.2d 1247, 1250 (11th Cir.1986) (holding that discharged part-time law enforcement officer "did not satisfy the requirement of publication because he ha[d] failed to establish that any disclosure of the reasons for the discharge, that is, the substance of the complaints, was ever made to the general public.").

Alternatively, to the extent that Mr. Coke has plausibly asserted a due process violation premised upon either a deprivation of a property interest or, alternatively, a liberty interest, his complaint confirms that he participated in a post-discharge appeals process. Further, Mr. Coke fails to articulate how his procedural due process rights were compromised in a cognizable manner.

As the Eleventh Circuit explained in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994):

> [D]ue process is satisfied when the challenger has an opportunity to present his allegations and to demonstrate the alleged bias. A demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process. As we mention above, unlike substantive due process violations, procedural due process violations do not become complete "unless and until the state refuses to provide due process." *Zinermon*,

494 U.S. at 123, 110 S. Ct. at 983. More specifically, in the case of an employment termination case, "due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Schaper v. City of Huntsville*, 813 F.2d 709, 715–16 (5th Cir. 1987) (quoting *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S. Ct. 1908, 1917, 68 L. Ed. 2d 420 (1981)) (footnote omitted).

In *Parratt* (and its progeny, *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)), the Supreme Court held that due process did not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property. All that due process requires, the Court said, is a post-deprivation "means of redress for property deprivations satisfy[ing] the requirements of procedural due process." *Parratt*, 451 U.S. at 537, 101 S. Ct. at 1914; *accord Hudson*, 468 U.S. at 533, 104 S. Ct. at 3204.

The precedent established by *Parratt* is unambiguous: even if McKinney suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation. As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners, under *Parratt*, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation. It is to an examination of this state remedy—and a determination of whether it satisfies due process—that we now turn.

In this case, McKinney failed to take advantage of any state remedies, opting instead to pursue his claim in federal court. In his en banc brief, McKinney asserts that the state remedy—review by Florida courts—is insufficient, largely because the statute of limitations for certiorari petitions of termination cases is significantly shorter than that for torts. McKinney also states that the state court procedure is deficient

because the Florida courts' power to review is limited to the record
before the Board. <u>We disagree with McKinney's conclusion that
Florida's process is inadequate</u>.

*McKinney*, 20 F.3d at 1562-63 (footnote omitted) (emphasis added).

Here, while Mr. Coke has criticized the outcome of his post-termination and/or
name-clearing hearing before the HABD, he has not "allege[d] in his complaint that
the state procedures [available to remedy any infirmity in that process] were
inadequate." 20 F.3d at 1563 n.18. Therefore, akin to *McKinney*, Mr. Coke has not
plausibly stated a procedural due process violation because he has not asserted (and
cannot reasonably assert) that <u>Alabama</u> "refuses to make available a means to remedy
the deprivation." *Id.* at 1563; *see also id.* at 1557 ("In other words, the state may cure
a procedural deprivation by providing a later procedural remedy; only when the state
refuses to provide a process sufficient to remedy the procedural deprivation does a
constitutional violation actionable under section 1983 arise."). Accordingly,
Defendants' Motion is due to be granted with respect to Mr. Coke's due process
claims.

## Mr. Coke's Purported Equal Protection Claims

As the Eleventh Circuit has summarized the scope of protections afforded by
the equal protection clause:

[T]he Equal Protection Clause requires government entities to treat

9

similarly situated people alike. Equal protection claims are not limited
to individuals discriminated against based on their membership in a
vulnerable class. Rather, we have recognized any individual's right to
be free from intentional discrimination at the hands of government
officials.

*Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006) (citing *E&T Realty*

*v. Strickland*, 830 F.2d 1107, 1112 (11th Cir. 1987)).

Mr. Coke's purported equal protection claims also do not meet *Twombly*'s

plausibility standard. In particular, nowhere within his complaint does Mr. Coke

contend that intentional discrimination connected to his "race, religion, national

origin, or some other constitutionally protected basis" played a part in Defendants'

employment-related treatment of him. *Sweet v. Secretary, Dept. of Corrections*, 467

F.3d 1311, 1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th

Cir. 2001)).

Further, the Supreme Court has made it clear that "a public employee can[not]

state a claim under the Equal Protection Clause by alleging that she was arbitrarily

treated differently from other similarly situated employees, with no assertion that the

different treatment was based on the employee's membership in any particular

class."*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 594, 598, 128 S. Ct. 2146, 2148,

170 L. Ed. 2d 975 (2008); *see id.*, 128 S. Ct. at 2148-49 ("We hold that such a

'class-of-one' theory of equal protection has no place in the public employment

10

context."); *see also id.* at 598, 128 S. Ct. at 2151 ("Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.").

Instead, "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Enquist*, 553 U.S. at 605, 128 S. Ct. at 2155. Therefore, in the absence of an allegation that Defendants' treatment of Mr. Coke is tied to some type of class-based discrimination, the equal protection clause is not plausibly available to Mr. Coke. *See id.* at 609, 128 S. Ct. at 2157 ("[R]atifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'" (quoting *Connick v. Myers*, 461 U.S. 138 at 154, 103 S. Ct. 1684, 1694, 75 L. Ed. 2d 708 (1983))). Accordingly, Defendants' Motion is due to be granted with respect to Mr. Coke's equal protection claims.

## IV.   Conclusion

For the reasons stated above, the Motion is due to be granted. However, because Mr. Coke is proceeding *pro se* and because he has attempted, at least to some

11

extent, to explain why his claims might be cognizable in his brief filed in opposition to the Motion, his claims are due to be dismissed <u>without prejudice</u> to the right to reassert them in a <u>plausible</u> fashion by way of an <u>amended pleading</u> to be filed no later than <u>August 25, 2014</u>. The court will enter a separate order.

      **DONE** and **ORDERED** this 23rd day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

12